cat / div 530/2241/w P3   **UNITED STATES DISTRICT COURT**

Case # _____

Judge _____ Mag R ₵ ıs

Motn Ifp __NO__ Fee pd $ __O__

Receipt # _____

**FOR THE SOUTHERN**

**DISTRICT OF FLORIDA**

FILED BY __P6__ D.C.

APR 07 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

---

*In The Matter of:*

_JOHAN JAVIER HERNANDEZ GUERERE_

     Petitioner

VS.

_U.S Attorney General; WILLIAM BARR_

     Respondent

*(U.S Attorney General) et al.,*

    *John Kelly*

     *(Secretary D.H.S.)*

Civil Action No

_A#216-063-603_

Petition for A: **Writ of Habeas Corpus.**

*pursuant To 28 U.S.C 2241*

*Petition for A **Writ of Habeas Corpus.***

*PURSUANT TO 28 U.S.C 2241*

Petitioner _JOHAN JAVIER HERNANDEZ GUERERE_ appearing pro se, hereby petitions this court a writ of habeas corpus and seeks declaratory and injunctive relief review the lawfulness of his detention by the United States Department Of Homeland Security. Immigration and Customs Enforcement (ICE) for more than **180 days** because ICE has been unable to deport him to his native country of citizenship and this is the **2ⁿᵈ time** he is going through **90 days** review process.

     In support of this petition and complaint, petitioner alleges as follows:

## *CUSTODY:*

     Petitioner is in the Physical custody of respondents and U.S Immigration and Customs Enforcement (ICE). Petitioner is detained at the GLADES CORRECTION INSTITUTION (GLD) IN MOOREHAVEN. FL. pursuant to a contractual agreement with the Department of Homeland Security.

Petitioner is under the direct control of respondents and their agents.

1

## *JURISDICTION:*

This action arises under the United States constitution, the Immigration and Nationality Act of 1952, as amended, 8U.S.C. 1101 et seq. (The Act), and the administrative procedure Act, 5 U.S.C. 701 et seq. (the APA).

Jurisdiction exists in this court pursuant to 28 U.S.C. 2241 et seq, 28 U.S.C. 1331, the APA, 5 U.S.C 701 et seq the Declaratory Judgment Act, 28 U.S.C. 2201 et seq, and the All writs Act, 28 U.S.C. 1361. The federal Question statue 28 U.S.C & 1331, Bivens-vs.- six Unknown Federal Narcotic Agents, 403 US 388 91 s.ct. 199, 29 led 2d 619 (1971) and the Declaratory Judgment statue

Petitioner has exhausted any and all administrative remedies to the extent required by law.

## *VENUE:*

Venue in this district is proper under 28 U.S.C. 1391. Because the officer in charge who makes custody decision in petitioner's case is located within this judicial district, venue lies in the United States district court for the Southern District of Florida the judicial district in which petitioner is currently detained.

## *PARTIES:*

*Petitioner is a native and citizen of <u>VENEZUELA</u>. Petitioner was first ordered/Deported about or around <u>October 07, 2019</u> and was detained. Respondent has gone through the <u>90 day</u> review process <u>2 times</u> while he was detained. The respondent was taken into custody this time on <u>May 11, 2019</u> and has remained in their custody continuously since that date.*

*Respondent <u>WILLIAM BARR</u> issued in his official capacity as the attorney general of the United States and is responsible for the administration of D.H.S/ICE and the implementation and enforcement of the Immigration and Naturalization Act (INA). As such, Mr. <u>WILLIAM BARR</u> has ultimate custodial authority over petitioner.*

*Respondent Aldo Martin issued in his official capacity as the officer in charges at the Krome Detention Center in Miami, Florida. In his capacity he maintains responsibility over the day to day operations at Krome Detention Center in Miami, Florida where petitioner is presently detained by ICE.*

*Respondent John Kelly issued in his official capacity as secretary of the Department of Homeland Security. In his capacity he is responsible for the administration of the immigration laws pursuant to 8U.S.C. 1103(a) and has ultimate custodial authority over petitioner.*

## *FACTS:*

1. Petitioner, *JOHAN JAVIER HERNANDEZ GUERERE* is a native of *Venezuela*.
2. Petitioner first entered the United States on or about July 26, 2016.
3. An Immigration Judge Ordered Removal/ Deportation in October 07, 2019. **See Exhibits.**
4. Petitioner was taken into custody this time on May 11, 2019 and has remained in custody.
5. Petitioner has not been on supervision but is willing to comply with all requirements...
6. Petitioner has cooperated fully with all efforts by ICE to remove petitioner from the United States. Specifically, petitioner voluntarily provided identity documents.
7. To date however ICE has been unable to remove/Deported petitioner to any country as Venezuela is not good terms with the U.S nor does the U.S. have an Embassy in Venezuela any longer.(See Exhibits) **no flights to Venezuela no U.S. Embassy in Venezuela and no Venezuelan consulates in the United States.**
8. Petitioner has maintained good behavior while in detention, and has abided by all rules and regulations.
9. Petitioner's  has been  through the 90 day review process detained 2 time(s) at which time petitioner is still in custody
10. If released petitioner will reside at 11121 NW 89th terrace #2105 Doral FL 33178, where his family awaits for his release.
11. Petitioner has family tied in the community.
12. Petitioner does not pose a danger to the community.
13. Petitioner is not a flight risk.
14. Petitioner will report and comply with all rules and regulations of supervision.

### *Exhibits Attached:*

1. **Exhibit A, Date of the Final Order of Deportation on (October/07/2019)**
2. **Exhibit b (CNN) Suspension of all flights to Venezuela (Release Date: May 15, 2019).**
3. **Exhibit c Venezuela closes embassy and consulates in the USA.**
4. **Exhibit d State Department says all U.S. Diplomats have left Venezuela.**
5. **Exhibit e Life in the Limbo: the uncertainty of Venezuelans without a valid passport in the U.S.**
6. **Exhibit f Suspension of all flights to Venezuela (Release Date: May 15, 2019).**

## CLAIMS FOR RELIEF:

### COUNT ONE

*(Detention in violation of the statute and Regulations)*

*Petitioner repeats and re-alleges the allegations as described above as though set forth fully herein.*

*Section 241 of the immigration and Nationality Act permits the detention of an alien with a final order of removal for a period of 90 days. In the case K. Rosati (supra note 48, at 531-32) argues that individuals granted deferral or Deportation should be eligible for release under supervision pursuant to INA 241(a)(3) and 8 CFR 241.3 to 241.5 after their 90 day removal period has expired.*

*(a) An Alien who has been detained beyond the presumptive 90 days should be released where the government is unable to present documented confirmation that the foreign government at issue will agree to accept the particular individual in question. See AGBADO vs. John Ashcroft, 2002 U.S. Dist. LEXIS 15797 (D. Mass. AUGUST 22, 2002)*

*Because there is no significant likelihood of removal in the reasonably foreseeable future, and because none of the special circumstances exist here to justify petitioners continues detention. Petitioner must be released under ICE supervision.*

### COUNT TWO

*(Substantive Due Process Violation)*

*Petitioner repeats and re-alleges the allegations set forth in paragraphs' 1 through 15 above as though set forth fully herein.*

*As a person in the United States, petitioner is protected by the Due process clause of the Fifth Amendment. ICE has detained petitioner for more than ninety (90) days since the issuance of his final order of removal. There is no significant likelihood that petitioner's removal will occur in the reasonably foreseeable future. Petitioner does not pose any danger to the community or is petitioner a flight risk, and no special circumstances exist to justify his continued detention. As petitioner is not justified and violates substantive due process. See Zadvydas, 533 U.S at 690-91.*

### COUNT THREE

### (PROCEDURAL DUE PROCESS VIOLATION)

*Under the Due Process Clause of the Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that s/he should not be detained. Petitioner in this case has been denied that opportunity. There is no administrative mechanism in place for the petitioner to obtain a decision from a neutral arbiter or appeal a custody decision that violates Martinez. See generally 8 C.F.R. 212.12. A number of courts have identified a substantial bias within ICE towards the continued detention of aliens, raising the risk of an erroneous deprivation to constitutionally high levels. See, e.g., Phan v. Reno, 56 F. Supp. 2d 1149, 1157 (W.D. Wash. 1999) ("INS does not meaningfully and impartially review the Petitioners' status."); St. John v. McElroy, 917 F. Supp. 243, 251 (S.D.N.Y. 1996) ("Due to political and community pressure, INS, an executive agency, has ever incentive to continue to detain aliens with aggravated felony convictions, even though they have served their sentences, on the suspicion that they may continue to pose a danger to the community."); see also Rivera v. Demore, No. C99-3042 THE, 199 WL521177, \*7 (N.D.Cal. Jul. 13, 1999) (procedural due process requires that aliens release determination be made by impartial adjudicator due to agency bias).*

1.  After three months the government bears the burden of disproving an alien's "good reason to believe that there is no significant likelihood of removal in the reasonable forseeable future" see Zhou v Farquharson, 2001 US Dist Lexis 18339\*2\*3 (D. mass Oct 19, 1001) (Quoting and summarizing Zadvydas).

2.  Moreover for detention to remain reasonable, as the period of prior post removal confinement grows, What counts as the "reasonably foreseeable future" conversely would have to shrink" Zadvydas, 533 US at 701. ICE"s administrative regulations also recognize that the HQPDU has a 3 month period for determining whether there is a significant likelihood of an alien's removal in the reasonable foreseeable future. See 8 CFR §241.4 (k)(ii).

3.  An alien who has been detained beyond the presumptive three months should be released where the government is unable to present documented confirmation that the foreign government at issue will agree to

5

accept the particular individual in question. See Agbada v. John ascroft 2002 US dist. lexis 15979 (d. mass, August 22, 2002) (court "will likely grant" Habeas petition after fourteen months if ICE is unable to present document confirmation that the Nigerian government has agreed to (petitioners)repatriation") Zhou, 2201, US Dist Lexis 19050 at *7(WD. Wash, February 28, 2002) (government's failure to offer specific information regarding how or when it expected to obtain the necessary documentation of cooperation from the foreign government indicated that there was no significant likelihood of petitioner's removal in the reasonably foreseeable future.

4. U.S. Immigration laws permit the INS to detain aliens following a final order of deportation. See 8 U.S.C. 1231 (West 2002). Sections 1231 (a)(1) and (8) of 2 U.S.C. provide that the United States Attorney General shall remove and detain an alien within the "removal period", which is generally ninety days. The beginning date of a removal period can vary; In petitioner's case, the removal period began around **October 7, 2019.** See U.S.C. 1231(a)(1)(B)(iii). Rough calculations tell us his ninety-day removal period ended at the end of **January 5, 2020** see Zhou v. Farquarson, 2001 US Dist Lexis 18339 *2*3 (D. mass Oct 19, 2001) (quoting and summarizing Zadvydas). Petitioner was detained by I.C.E. this time on **May 11, 2019** and deported on **October 7, 2019** the 90 day review process ended on **January 5, 2020.**

5. Zadvydas, 533 U.S. at 699700. Thus, on remand the Ninth Circuit clarified that its conclusion that there was no likelihood of Mass removal in the foreseeable future was based not only on the fact that there was no existing or pending repatriation agreement, but also on the fact that there was an insufficient showing that the future negotiations were likely to lead to a repatriation agreement within the reasonable foreseeable future. Ho Ma v. Ashcroft, 257 F. 3d 1095, 1099 (9th Cir. 2001) **See Exhibits Provided. No flights to Venezuela, No Embassy!**

6. Petitioner need not make a showing that removal is impossible. See Zadvydas, 533 U.S. at 702 (rejecting this requirement of the Fifth Circuit Zadvydas court). Although some possibility of removal may exist, Petitioner's period of post-final-order detention has been sufficiently long such that a remote, no-specific possibility does not satisfy Respondent's burden. See Mohamed v. Ashcroft, 2002 U.S. Dist. LEXIS 16179, at *3 (W.D. Wash Apr. 15, 2002) (adopting magistrate judge's finding that government did not meet Zadvydas burden because it provided no information regarding how or when it expected to obtain documents or cooperation from foreign government). Petitioner has shown there is no significant likelihood of his removal in the reasonably foreseeable future. Respondents have thirty days to remove the Petitioner from the country. If Respondents cannot remove the Petitioner from the country within thirty days, Petitioners writ of habeas corpus will issue and Petitioner shall be released on conditions suitable to the INS, which may include those set forth in 8 C.F.R. 241.5.

## PRAYER FOR RELIEF

WHEREFORE, petitioner prays that this honorable court to Grant the following relief:

1. __ Assume jurisdiction over this matter, declaring that petitioner continued detention is not authorized by the INA and/or violated the Fifth Amendment;

2. __ Issue a writ of habeas corpus directing Respondent immediately release petitioner from custody.

3. __ order respondents to refrain from transferring the Petitioner out of the Jurisdiction of ICE Middle District during the pendency of these proceedings and while the petitioner remains in Respondent's custody; and

4. __ Award petitioner attorney's fees and costs under the Equal access to Justice Act("EAJA"), as amended, 5 U.S.C. 504 and 28 U.S.C. 2412, and on any other basis justified under law; and

5. __ Grant any other and further relief this court may deem appropriate.

I swear under the penalty of perjury that the above text is true to the best of my knowledge.

By: _____
JOHAN JAVIER HERNANDEZ GUERERE pro'se
MNI#20001425.   A#216-063-603.
Glades Correction Institution (GLD).
1297 EAST STATE ROAD 78 NW
Moorehaven, FL 33471.

## *CERTIFICATE OF SERVICE*

*I HEREBY CERTIFY that a true correct copy has been furnished to the Clerk of Courts, U.S. Attorney's Office and the parties listed below. By U.S. mail this __04 day of April 2020.__*

(1) WILLIAM BARR:
   U.S. Attorney Office.
   Office of Immigration Litigation:
   P.O BOX 878 Ben Franklin Station.
   Washington DC, 20044

(2) CLERK OF COURTS
   U.S. DISTRICT COURT
   SOUTHERN DISTRICT OF FLORIDA
   400 North MIAMI AVE
   MIAMI, FL 33128.

(3) U.S. Attorney's office
   U.S. DISTRICT COURT
   SOUTHERN DISTRICT OF FLORIDA
   400 North MIAMI AVE
   MIAMI, FL 33128.

(4) MARC J MOORE
   Field office Director, ERO/DHS
   865 SW 78th AVE, Suite 101
   Plantation, FL, 33324.

(5) ICE HEADQUARTER CASE
   Management Unit:
   U.S. Department Of Homeland Security:
   Potomac Center North
   500 12th Street SW
   Washington, DC 20536.

(6) C/O Deportation Officer:
   Carlos Sanchez.
   KROME S.P.C.
   18201 SW 12th Street
   MIAMI, FL 33194

By: _____

*JOHAN JAVIER HERNANDEZ GUERERE* pro`se
   MNI#20001425.   A#216-063-603.
   Glades Correction Institution (GLD).
   1297 EAST STATE ROAD 78 NW
   Moorehaven, FL 33471.

9

U.S. Department Of Homeland Security
Immigration and Customs Enforcement
KROME SERVICE PROCESSING CENTER,
18201 SW 12th Street
MIAMI, FL 33194
Attn: Immigration Officer:

Dear immigration officer:

I request that ICE review my custody status while talking the following information into consideration, because I believe I qualify for release under an order of supervision. I have been in detention more than 180 days from when my order of removal became final, as I have been ordered deported/removed, and it is unlikely that I will be deported to Venezuela in the reasonably foreseeable future. **See documents attached to habeas.**

1. I entered the United States in around July 26, 2016 and ordered/deported in/around October 7, 2019. **See Exhibits.**

2. My home country will not accept my deportation or provide travel documents. **See Exhibits.**

3. I am not danger to the public safety.

4. I have been through the **90** day review process **2 times.**

5. I will be released on supervision.

6. My phone number is (786) 702-2888.

7. I will live at 11121 NW 89th terrace #2105 Doral FL 33178.

8. I am not significant flight risk.

9. I am prepared to comply with all restrictions imposed on me as part of my release.

10. I will not be a burden on the community or society once I am release.

Thanks you for your time and assistance in this matter.


By: _____
JOHAN JAVIER HERNANDEZ GUERERE pro'se
      MN1#20001425,   A#216-063-603,
      Glades Correction Institution (GLD),
      1297 EAST STATE ROAD 78 NW
      Moorehaven, FL 33471.

10

# 1. Exhibits A, Date of the Final Order of Deportation on (October/07/2019)

IMMIGRATION COURT
18201 SW 12TH ST, BLDG 1 STE C
MIAMI, FL 33194

In the Matter of

Case No.: A216-063-603

HERNANDEZ GUERERE, JOHAN JAVIER
    Respondent

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on _____/7/2019
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.
[ ✓ ] The respondent was ordered removed from the United States to _VENEZUELA_
    or in the alternative to .
[ ] Respondent's application for voluntary departure was denied and
    respondent was ordered removed to  or in the
    alternative to .
[ ] Respondent's application for voluntary departure was granted until
    upon posting a bond in the amount of $ _____
    with an alternate order of removal to .
Respondent's application for:
[ ✓ ] Asylum was ( )granted  ( ✓ )denied( )withdrawn.
[ ✓ ] Withholding of removal was ( )granted ( ✓ )denied ( )withdrawn.
[ ] A Waiver under Section _____ was ( )granted ( )denied ( )withdrawn.
[ ] Cancellation of removal under section 240A(a) was ( )granted ( )denied
    ( )withdrawn.
Respondent's application for:
[ ] Cancellation under section 240A(b)(1) was ( ) granted ( ) denied
    ( ) withdrawn.  If granted, it is ordered that the respondent be issued
    all appropriate documents necessary to give effect to this order.
[ ] Cancellation under section 240A(b) (2) was ( )granted ( )denied
    ( )withdrawn.  If granted it is ordered that the respondent be issued
    all appropriated documents necessary to give effect to this order.
[ ] Adjustment of Status under Section _____ was ( )granted ( )denied
    ( )withdrawn.  If granted it is ordered that the respondent be issued
        all appropriated documents necessary to give effect to this order.
[ ✓ ] Respondent's application of ( ✓ ) withholding of removal ( ) deferral of
    removal under Article III of the Convention Against Torture was
    ( ) granted ( ✓ ) denied ( ) withdrawn.
[ ] Respondent's status was rescinded under section 246.
[ ] Respondent is admitted to the United States as a _____ until _____.
[ ] As a condition of admission, respondent is to post a $ _____ bond.
[ ] Respondent knowingly filed a frivolous asylum application after proper
    notice.
[ ] Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.
[ ] Proceedings were terminated.
[ ] Other: _____
    Date:

RENE D. MATEO
Immigration Judge

Appeal: Waived/Reserved   Appeal Due By:

ALIEN NUMBER: 216-063-603      NAME: HERNANDEZ GUERERE, JOHAN JAVIER

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY:   MAIL (M)     PERSONAL SERVICE (P)
TO: [ ] ALIEN   [ ] ALIEN c/o Custodial Officer   [ ] ALIEN's ATT/REP   [ ] DHS
DATE: _____ BY: COURT STAFF ____
        Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

Q6

# 2. Exhibit B, (CNN) Suspension of all flights to Venezuela (Release Date: May 15, 2019)

**Washington (CNN)**The US Department of Homeland Security announced Wednesday that it is suspending "all commercial passenger and cargo flights between the United States and Venezuela" indefinitely.

Secretary of State Mike Pompeo has approved the suspension and Transportation Secretary Elaine Chao has implemented it, according to a statement from DHS.

"This determination is based on the ongoing political instability and increased tensions in Venezuela and associated inadvertent risk to flight operations," the statement said, noting a concern for the safety of passengers, crew and aircraft.

A State Department official confirmed the suspension of passenger and cargo flights due to security concerns.

"On May 15, the US government announced that all nonstop flights between the United States and Venezuela are suspended, effective immediately, due to security concerns," the official told CNN.

"As a result of the Maduro regime's inability to govern and perpetuation of lawlessness, it is no longer possible to certify that Venezuela is meeting baseline standards of security," the official added, referring to embattled President Nicolas Maduro.

All commercial passenger flights from the US to Venezuela had already been suspended by the individual airlines.

American Airlines was the last to suspend its flights, ending its Miami-Caracas flight in March.

The State Department is also advising US citizens who are in Venezuela to leave the country if they can do so safely, "via any available means."

# 3. Exhibit C, Venezuela closes embassy and consulates in the USA.

# Venezuela closes embassy and consulates in the USA

24.01.2019, 16: 51 EST

This was announced on Thursday by President Nicolas Maduro, speaking in the Supreme Court, writes RBC.

In his speech, Maduro also appealed to the people of the United States: "I urge the people of the United States to reject this coup d'état and support us in the fight for democracy in Venezuela."

The Venezuelan President also stated that he agreed with the call of Mexico and Uruguay for a dialogue between the Venezuelan government and the opposition to resolve the political crisis.

The decision to close the embassy and consulates of Venezuela in the States was made the next day after Maduro announced the severance of diplomatic relations with the United States, accusing Washington of supporting "an attempt to carry out a coup in the country."

Recall Maduro was taken to the presidential oath for the second term 10 of January 2019 of the year amid accusations of falsification of voting results and other election fraud. Amid the upheavals in the country, Juan Guaydo, the head of the opposition-led National Assembly of Venezuela, Juan Guaydo, declared himself the interim president, saying that he "formally assumes the responsibility of the national executive body."

Thousands of Venezuelans staged protests against Maduro, urging the leader to resign, because the country cannot cope with rising inflation and shortages of food and medicine. At least a dozen demonstrators were killed during an intensifying confrontation with the Maduro regime.

"The people of Venezuela courageously spoke out against Maduro and his regime and demanded freedom and the rule of law," said US President Donald Trump on Wednesday, recognizing guaido as the country's legitimate leader.

Maduro responded with a break in diplomatic relations with the United States and gave American diplomats in the country 72 hours to leave the country. But US Secretary of State Mike Pompeo said that the staff of the US Embassy will remain in Venezuela at the invitation of Guaydo.

"The United States does not believe that former President Nicolas Maduro has the legal authority to sever diplomatic relations with the United States or declare our diplomats persona non grata," Pompeo said.

Several other Latin American countries, along with Canada, also recognized Guaido as the leader of Venezuela.

But Russia resolutely came out in support of Maduro politically and militarily, which caused tensions between the Kremlin and Washington.

# 4. Exhibit D, State Department says all U.S. Diplomats have left Venezuela.

# State Department Says All U.S. Diplomats Have Left Venezuela

March 14. 20199:36 PM ET

Secretary of State Mike Pompeo on Thursday announced that all remaining U.S. diplomats have left Venezuela "for the time being," as relations between the two countries continue to deteriorate.

"Today, all U.S. diplomats remaining in Venezuela departed the country," he said in a statement, adding that it is "a difficult moment for them."

"They are fully dedicated to our mission of supporting the Venezuelan people's aspirations to live in a democracy and build a better future for their families," he added.

Despite the personnel evacuation, Pompeo said the Trump administration maintains its support of opposition leader Juan Guaidó and his effort to oust authoritarian President Nicolás Maduro, whom the U.S. no longer recognizes as the country's rightful leader.

"U.S. diplomats will now continue that mission from other locations where they will continue to help manage the flow of humanitarian assistance to the Venezuelan people and support the democratic actors bravely resisting tyranny," Pompeo said.

Pompeo addressed the Venezuelan people, saying the U.S. is eager to provide them desperately needed humanitarian assistance, including food and medicine. "It's the Maduro regime which has prevented that," he said.

23 January 2019, the United States and Venezuela have no formal diplomatic ties.

Venezuelan President Nicolas Maduro on Wednesday gave US diplomats 72 hours to leave the country in response to the head of the National Assembly declaring himself acting president amid massive anti-government protests.

Hours after President Donald Trump officially recognized opposition leader Juan Guaido as the country's legitimate president, a defiant Maduro appeared before supporters to accuse the United States of backing an attempted coup.

Maduro announced that he was cutting remaining political and diplomatic ties with Washington. "We cannot accept the invasive policies of the empire, the United States, the policies of Donald Trump," he said to cheers from the crowd. "Venezuela is a land of liberators."

"We will not surrender," Maduro added.

US Secretary of State Mike Pompeo reiterated the United States would support Guaido as he carries his duties as president and decides the status of the country's diplomats in Venezuela.

A senior Trump administration official dismissed as "meaningless" Maduro's order that diplomats leave the country within days.

The US Embassy in Caracas issued a security alert indicating that US diplomats and their families will be restricted to travel only within a few neighborhoods in Caracas and school-age children will be staying at home.

# 5. Exhibit E, Life in limbo: The uncertainty of Venezuelans without a valid passport in the U.S.

# Life in limbo: The uncertainty of Venezuelans without a valid passport in the U.S.

**Ariela Navarro / AFP** 2, 2019

Like many Venezuelans in the United States, Hernandez could not renew her passport in the middle of a crisis intensified by the rupture of relations between the two countries.

"I feel frustrated, with anger and pain," said Hernandez, who had not seen her father for six years when he fell into intensive care.

Many Venezuelans are trapped in the "limbo" created after the rupture of diplomatic relations between the two countries and pinned hopes on the rise of a group of soldiers against the Maduro government on Tuesday.

"I have a lot of faith, because for the first time in 20 years, we have the view of the international community in Venezuela," Maria Eugenia Montilla, who accompanied her daughter to protest in front of the Venezuelan embassy in Washington D.C., told AFP.

Her daughter, Karla Monagas, 27, had to leave the country for her participation in the 2014 protests. She currently lives in Maryland, but her expired passport threatens her immigration status.

"My best option now is that before my visa expires a judge grants the interview and they can review my case," Karla told AFP. Like her mother, she wore a Venezuelan flag in the form of a cape.

But if that does not happen, she may remain undocumented.

## – "One of the strongest things there is" –

A little more than three months ago, Venezuelan President Nicolás Maduro broke ties with the United States, after the Donald Trump government recognized Juan Guaidó as interim president. Since then, the situation of Venezuelans in the United States has become more complicated.

The Venezuelan consulates in the United States closed, and Maduro has not yet designated a country that looks after their interests, as did the U.S., which delegated the mandate to Switzerland.

"Not to say goodbye to your dad is one of the strongest things there is," said a 39-year-old woman, who asked to be identified as María for fear of reprisals, and who went through the same tragedy as Nastacha Hernández. His father died in Venezuela in September 2018.

"I could not go to say my last goodbye for lack of a passport," she said.

And in the midst of this drama arise groups that charge up to $1,000 for an extension of the passport, which is nothing more than a sticker that extends its validity for two years.

Venezuela is going through the worst crisis in its modern history and, since 2015, almost 3 million Venezuelans have emigrated in search of better living conditions.

It is estimated that there are between 400,000 and 600,000 in the United States, according to U.S. surveys and data from the Guaidó delegation. According to the UN refugee agency UNHCR, more than 72,000 Venezuelans have sought asylum in the United States.

Maduro feels "contempt" for Venezuelans abroad, suggested Francisco Marquez, who was one of the so-called political prisoners.

"They see every person who is outside as an enemy of the regime," he said.

# — "Months have passed, and I still cry" —

Guaidó, recognized as interim president by some 50 countries, appointed as his ambassador in Washington Carlos Vecchio, who until now has not been able to reopen the consular network.

"They took passports, extensions, money and liaison systems with Venezuela, and our job is to reopen the consulates to the services of all Venezuelans," Vecchio wrote at the end of February on Twitter.

The Guaidó delegation took the consulate in New York, but in Washington the headquarters are still occupied by pro-Maduro activists.

AFP visited this four-story building located in the elegant neighborhood of Georgetown and found that the offices seem to have been abandoned with haste, although many of the hard disks of the computers were extracted and the filing cabinets were emptied.

Stacks of passports were piled up on desks.

"The Maduro regime dismantled and closed the entire consular network of Venezuela in the United States and some other countries," Gustavo Marcano, minister counselor of the Guaidó delegation in the United States, told AFP.

"Obviously, the regime was not interested in providing any consular service because, there are millions of Venezuelans who have had to emigrate," he said.

Eleven countries in Latin America — Argentina, Brazil, Chile, Colombia, Costa Rica, Ecuador, Mexico, Panama, Paraguay, Peru and Uruguay — accept the entry of Venezuelans with expired passports.

The United States has not announced a similar measure so far. There is a project in the Senate to protect Venezuelan migrants under the form of temporary protection status (TPS) that protects people from countries suffering from conflict or humanitarian crisis.

Meanwhile, the Venezuelans stuck in legal limbo in the United States count the days for their uncertainty to be resolved.

"Months have passed and I still cry," María said. "If someday I return to Venezuela — it will not be to live there but to visit — and my first stop will be to see my father's ashes."

# 6. Exhibit F, Suspension of all flights to Venezuela (Release Date: May 15, 2019)

**Release Date:** May 15, 2019

Under 49 U.S.C. § 44907 Acting Secretary of Homeland Security Kevin K. McAleenan determined that conditions in Venezuela threaten the safety and security of passengers, aircraft, and crew, requiring an immediate suspension of all commercial passenger and cargo flights between the United States and Venezuela.  In accordance with the statute, the Secretary of State has approved flight suspension, and the Secretary of Transportation has implemented the determination.

This determination is based on the ongoing political instability and increased tensions in Venezuela and associated inadvertent risk to flight operations.

In coordination with the Department of State and the Department of Transportation, the Department of Homeland Security will continue to monitor this situation. If and when the conditions in Venezuela change, and if in the public interest, the Secretaries will revisit this determination. Until then, the flight suspension will remain in effect indefinitely.

Johan Javier Hernandez Guerere.

A# 2160 63 603.

MNI:# 2000 1425.

GLADES CORRECTION INSTITUTION

1297 EAST STATE ROAD 78 NW

MOORE HAVEN, FL 33471.

This mail originated from

CLERK OF Courts

U.S. District Court

Southern District of Fla

400 North Miami AVE

Miami, FL 33128.

USMS INSPECTED